UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TERRI CAMBRE, ET AL.                                    CIVIL ACTION

VERSUS                                                        NO. 21-1067

UNION CARBIDE CORPORATION,                  SECTION "R" (1)
ET AL.

## ORDER AND REASONS

Before the Court is plaintiffs' motion for reconsideration of the Court's October 18, 2021 denial of plaintiffs' motion to remand.[1]  Defendants, The Dow Chemical Company ("Dow") and Union Carbide Corporation ("Union Carbide"), oppose the motion.[2]  For the following reasons, the Court denies plaintiffs' motion.

## I.    BACKGROUND

This case arises out of alleged exposure to ethylene oxide ("EtO") near a petrochemical plant in Hahnville, Louisiana (the "facility"), owned and operated by defendants Dow and Union Carbide.[3]  Plaintiffs are seven Louisiana residents who live, or previously lived, within five miles of the

---

[1]    R. Doc. 41.
[2]    R. Doc. 42.
[3]    R. Doc. 1-1 ¶ 1.

1

facility,[4] and who have contracted breast cancer allegedly because of unknowing exposure to dangerous levels of EtO emitted by the facility.[5]

On April 26, 2021, plaintiffs filed suit in the Civil District Court for the Parish of St. Charles, alleging that inhalation of EtO emitted from the facility was a substantial factor in causing plaintiffs' breast cancer.[6]   In their complaint, plaintiffs named as defendants Dow and Union Carbide,[7] as well as five individual defendants (the "employee defendants" or the "employees"): Jackie Yaworski,[8] Jorge Cerame,[9] Donald Eastepp,[10] Brian Eiler,[11] and Michael Faulkner.[12]   Plaintiffs alleged that the employee defendants were designated as Responsible Officials ("ROs") who provided emissions information to state regulators at the Louisiana Department of Environmental Quality ("LDEQ"), and who knew or should have known that the facility was emitting unsafe levels of EtO into the surrounding

---

[4]     *Id.* ¶¶ 12-18, 72-77.
[5]     *Id.* ¶¶ 1, 7-8.
[6]     *Id.* ¶¶ 1-9.
[7]     *Id.* ¶¶ 19-20.
[8]     *Id.* ¶ 21.
[9]     *Id.* ¶ 22.
[10]    *Id.* ¶ 23.
[11]    *Id.* ¶ 24.
[12]    *Id.* ¶ 25.

community.[13]   Plaintiffs alleged negligence[14] and civil battery[15] against the five employee defendants.   Four of the five employee defendants are residents of Louisiana.[16]

On June 2, 2021, defendants Dow and Union Carbide removed the case to federal court, contending that the non-diverse employee defendants were improperly joined, and that, therefore, this Court has diversity jurisdiction under 28 U.S.C. § 1332.[17]

On June 29, 2021, plaintiffs moved to remand the case to state court.[18] They argued that the employee defendants were not improperly joined because plaintiffs have shown a possibility of recovery against the employee defendants under Louisiana law.[19]   They contended that, because the in-state

---

[13]   *Id.* ¶¶ 52-63.

[14]   *Id.* ¶¶ 97-101 ("Count 4 – Negligence of Jackie Yaworski"); *id.* ¶¶ 108-112 ("Count 6 – Negligence of Jorge Cerame); *id.* ¶¶ 119-123 ("Count 8 – Negligence of Don Eastepp); *id.* ¶¶ 130-134 ("Count 10 – Negligence of Brian Eiler); *id.* ¶¶ 141-145 ("Count 12 – Negligence of Michael Faulkner).

[15]   *Id.* ¶¶ 102-107 ("Count 5 – Civil Battery by Jackie Yaworski"); *id.* ¶¶ 113-118 ("Count 7 – Civil Battery by Jorge Cerame); *id.* ¶¶ 124-129 ("Count 9 – Civil Battery by Don Eastepp); *id.* ¶¶ 135-140 ("Count 11 – Civil Battery by Brian Eiler); *id.* ¶¶ 146-151 ("Count 13 – Civil Battery by Michael Faulkner).

[16]   *See id.* ¶¶ 21-25.  Defendant Michael Faulkner attested in an affidavit that he now lives in Texas.  R. Doc. 32-8 ¶ 2.

[17]   R. Doc. 1 ¶¶ 14-23.

[18]   R. Doc. 21.

[19]   R. Doc. 21-1 at 8-17.

employee defendants were properly joined, the parties in the case are not completely diverse, and the Court should therefore remand for lack of subject-matter jurisdiction.[20]  Defendants Dow and Union Carbide opposed the motion to remand, and argued that the five employee defendants were improperly joined, and should be dismissed.[21]

On October 18, 2021, the Court denied the motion to remand, and dismissed plaintiffs' claims against the five employee defendants.[22]

On November 4, 2021, plaintiffs filed a motion for reconsideration of the Court's denial of the motion to remand.[23]  They contend that the Court's Order and Reasons denying remand contained multiple legal errors, and the motion should therefore be reconsidered.[24]  Defendants Dow and Union Carbide oppose the motion.[25]

The Court considers the motion below.

---

[20]   *Id.* at 6, 19.
[21]   R. Doc. 32.
[22]   R. Doc. 38.
[23]   R. Doc. 41.
[24]   R. Doc. 41-1.
[25]   R. Doc. 42.

4

## II.   LEGAL STANDARD

The Fifth Circuit has consistently recognized that parties may challenge a court's order under Rules 54(b), 59(e), or 60(b).  *Reyes v. Julia Place Condo.  Homeowners Ass'n, Inc.*, No. 12-2043, 2016 WL 4272943, at *2 (E.D. La. Aug. 15, 2016) (collecting cases).  "Rules 59 and 60, however, apply only to final judgments."  *Id.*  (citing *S. Snow Mfg. Co., Inc. v. Snowizard Holdings, Inc.*, 921 F. Supp. 2d 548, 563-64 (E.D. La. 2013)).  If a party seeks reconsideration of an order that adjudicates fewer than all the claims among all the parties, then Rule 54(b) controls.

Here, plaintiffs seek reconsideration of an interlocutory order that denied remand, and dismissed some, but not all, of the defendants from this case.  Accordingly, Rule 54(b) is the appropriate standard under which to evaluate the motion.  *See Adams v. Columbia/HCA of New Orleans, Inc.*, No. 20-3030, 2021 WL 809372, at *1 (E.D. La. Mar. 3, 2021) (applying Rule 54(b) to plaintiff's motion to reconsider the court's order granting a Rule 12(b)(6) motion to dismiss that dismissed some but not all of plaintiff's claims); *Butler v. Denka Performance Elastomer LLC*, No. 18-6685, 2019 WL 697164, at *1 (E.D. La. Feb. 20, 2019) (applying Rule 54(b) to a motion for reconsideration of the denial of plaintiff's motion to remand); *Hill v.*

*Travelers Indem. Co.*, No. 11-4146, 2012 WL 12895265, at *1 (S.D. Tex. Sept. 5, 2012) (same).

Rule 54(b) provides that an order that adjudicates fewer than all of the claims among all of the parties "may be revised at any time" before the entry of a final judgment. Fed. R. Civ. P. 54(b). As Rule 54 recognizes, a district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco*, 659 F.2d 551, 553 (5th Cir. 1981). Under Rule 54(b), the court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.,* 864 F.3d 326, 336 (5th Cir. 2017). Although reconsideration under Rule 54(b) is within the trial court's broad discretion, reconsideration "is not provided indiscriminately whenever some party may wish it," as judges "must protect themselves and the other parties against the delays and burdens that could be imposed by yielding to simple disappointment or a deliberate desire to inflict delay and burden." *See* 18B Wright & Miller, Fed. Prac. & Proc. § 4478.1 (3d ed. 2021); *Calpetco 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1414-15 (5th Cir. 1993).

Reconsideration of an interlocutory order under Rule 54(b) is less stringent than reconsideration of judgments under Rule 59(e). *Austin*, 864 F.3d at 336. But "[a]lthough a less exacting standard applies, courts look to similar considerations as those it considers when evaluating Rule 59(e) motions." *Edwards v. Take Fo' Records, Inc.*, No. 19-12130, 2020 WL 3832606, at *11 & n.12 (E.D. La. July 8, 2020); *see also Pierce v. Kellogg Brown & Root, Inc.*, No. 15-6585, 2017 WL 2082947, at *1 (E.D. La. May 15, 2017). A motion to reconsider is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of [the order]." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004).

## III. DISCUSSION

Plaintiffs argue that the Court should reconsider its October 18, 2021 Order and Reasons denying remand and dismissing the employee defendants because the Court: (i) failed to recognize that, under Louisiana law, the employee defendants "may" have a personal duty to these plaintiffs, thereby supporting plaintiffs' dismissed negligence claims;[26] (ii) misapplied the improper-joinder framework of *Smallwood v. Illinois Central Railroad*

---

[26]   R. Doc. 41-1 at 2-4.

*Co.*, 385 F.3d 568 (5th Cir. 2004);[27] (iii) erroneously dismissed plaintiffs' civil-battery claims against the employee defendants;[28] and (iv) erroneously applied the improper-joinder doctrine to Texas defendant Michael Faulkner, resulting in his dismissal from the case.[29] The Court addresses each of plaintiffs' contentions in turn. In so doing, the Court assumes the parties' familiarity with its October 18, 2021 Order and Reasons.[30]

### A.   Personal Duty

First, the Court rejects plaintiffs' renewed attempt to argue that the employee defendants owed a personal duty to these plaintiffs for the purposes of liability under *Canter v. Koehring Co.*, 283 So. 3d 716 (La. 1973). In its remand order, the Court gave no fewer than four distinct reasons why plaintiffs were unable to show that such a duty was owed. Those reasons were that: (1) Dow and Union Carbide did not, as required under *Canter*, delegate relevant safety duties to the employee defendants by designating them as ROs; (2) plaintiffs alleged no facts indicating that the employee defendants had actual knowledge of the cited health risks; (3) the plaintiffs

---

[27]   *Id.* at 10-15.
[28]   *Id.* at 5-8.
[29]   *Id.* at 8-9.
[30]   R. Doc. 38.

were non-employees of the facility who were injured off the facility's premises; and (4) the employee defendants had never met any of the plaintiffs.[31]

In seeking reconsideration, plaintiffs focus on the latter two reasons. That they are unable to marshal legal authority or any other argumentation challenging the Court's first two reasons is grounds enough to deny their motion for reconsideration. Nonetheless, the Court proceeds to address, and reject, the substance of plaintiffs' arguments regarding the other two reasons: that the employee defendants had no personal contact with the plaintiffs, and that the plaintiffs were non-employees injured off the premises.

To the extent that the Court's opinion denying remand could be read to hold that there can never be a duty in the absence of personal contact, or if the injury occurs off the employer's premises, the Court acknowledges that there is authority to the contrary. But, for the following reasons, these authorities do not undermine the Court's conclusion in this case, that these employee defendants did not owe a personal duty to these plaintiffs.

First, on the issue of personal contact, the Court's Order cited *Kemp v. CTL Distribution, Inc.*, 440 F. App'x 240 (5th Cir. 2011), which in turn

---

[31]     *Id.* at 11-18.

quoted the Louisiana Supreme Court in *Esco v. Smith*, 468 So. 2d 1169 (La. 1985) for the proposition that, for personal liability to attach under *Canter*, the employee defendant must have had some personal contact with and responsibility toward the injured plaintiff.   *Kemp*, 440 F. App'x at 246 (quoting *Esco*, 468 So. 2d at 1175).  Plaintiffs urging reconsideration contend that the Fifth Circuit erred in *Kemp* when it cited *Esco*, because *Esco* involved an older body of law regarding "executive officer" liability, under which injured employees could sue their co-employed managers or supervisors for injuries sustained in the course of their work.[32]  In 1976, Louisiana's workers' compensation law was amended to foreclose these suits, except for intentional tort claims.  *See* La. Rev. Stat. § 23:1032.  Plaintiffs argue that *Esco*'s "jurisprudential rule" requiring personal contact and responsibility toward the injured claimant was thus "mooted."[33]

But plaintiffs cite no authority for this proposition.  They baldly assert that *Esco* was "superseded" as of 1976, and that the Fifth Circuit was wrong to cite it for the "personal contact" factor in 2011.  But even though executive-officer suits by co-employees were abrogated in 1976, it does not follow that the personal-contact consideration shares the same fate.  Notwithstanding

---

[32]    R. Doc. 41-1 at 3.

[33]    *Id.*

the 1976 amendment, the Court's *Canter* inquiry remains focused on whether the employee defendants owed and breached a duty that was personal to the injured plaintiffs. Whether those people ever met is relevant to that analysis. Consistent with this notion, *Kemp* and other *Canter* cases illustrate that the nature of the contact, if any, between the employee defendants and the plaintiff(s) is a factor that may be taken into account in the duty analysis. *See, e.g.*, *Kemp*, 440 F. App'x at 246 (finding no *Canter* liability despite that the employee defendant had "contact with [the decedent] on a daily basis"); *Sam v. Genesis Behav. Hosp., Inc.*, 255 So. 3d 42, 50 (La. App. 3 Cir. 2018) ("[E]ven if [the employee defendant] handled the clinical aspects of the facility and *had some personal contact* with the clients, Plaintiff offered no evidence to support her contention that [the employee defendant] assumed a duty to protect [those] clients from assaults from other clients." (emphasis added)).

Here, in its remand order, the Court found that the total absence of contact between the employee defendants and the plaintiffs constituted yet another reason why plaintiffs would be unable to show that the employees owed them a personal duty. That reasoning is not undermined by the 1976 amendment to Louisiana's workers' compensation law. The Court's citation to *Kemp* and *Esco* does not warrant reconsideration of the remand order.

Second, as to the undisputed fact that these plaintiffs are non-employees injured off the employer's premises, the Court finds no reason to reconsider its remand order. In their motion for reconsideration, plaintiffs cite four cases that they contend undermine the Court's finding that an off-premises injury weighs against a finding of personal duty. As an initial matter, in each of plaintiffs' cited cases, the respective court merely granted remand, and/or declined to dismiss certain claims, because plaintiffs in those cases had shown a *possibility* of recovery under *Canter*, based on the specific facts alleged. *See Ford v. Elsbury*, 32 F.3d 931 (5th Cir. 1994); *Garrett v. AEP River Operations, LLC*, No. 15-5562, 2016 WL 945056 (E.D. La. Mar. 14, 2016); *Davis v. Omega Refining, LLC,* No. 15-518, 2015 WL 3650832 (E.D. La. June 11, 2015); *Turner v. Murphy Oil USA, Inc.*, No. 05-45206, 2007 WL 4233676 (E.D. La. Nov. 28, 2007). But finding that certain facts, if proven, might establish a personal duty, is not the same as finding that a personal duty was owed.

Furthermore, even construing these cases as favorably as possible to plaintiffs, the facts in each case—two of which were already discussed in the Court's remand order—are crucially different from the facts presented here. For instance, in *Davis*, plaintiffs alleged that the defendants, including a plant manager sued individually, "failed to prevent frequent, foreseeable,

and preventable breakdowns" at the facility, and, "along with the improper functioning of refinery equipment, violated [their] hourly permit emission limits for" multiple chemicals. 2015 WL 3650832, at *1. Plaintiffs further alleged that the facility "concealed and misrepresented information" to LDEQ; "neglected to disclose a new un-permitted point-source altogether— inevitably resulting in the direct emissions of harmful pollutants without any measure of protection for the surrounding community;" and caused certain unpermitted discharges that went unreported to the proper authorities. *Id.* In denying the plant manager's motion to dismiss, the court found that more discovery was warranted as to the potential liability of the manager, who was an RO, and who testified that she was a "liaison for the plant with [LDEQ]." *Id.* at *4. There was thus a clear nexus between plaintiffs' alleged violations and the substance of the plant manager's role. Here, there are no allegations that the employee defendants made misrepresentations or omissions in their submissions to LDEQ, nor that they failed to report any unauthorized discharges from the facility. The significant differences between the allegations here and those in *Davis* make *Davis* unpersuasive.

In plaintiff's other three cases, evidence of the employee defendants' actual, personal knowledge of the risks favored a finding that the plaintiffs might be able to establish that a personal duty was owed. Specifically, *Ford*,

*Garrett*, and *Turner* all involved factually substantial allegations that the employee defendants had personal knowledge of the relevant hazards, and had disregarded the risk.  In *Ford*, a case involving an explosion caused by a rupture of the plant's urea reactor, employees had testified that they had complained of a leaky reactor and an unsafe work area, that management had not acted, and that the plant-manager defendant had said, "[s]ometimes you have to overlook safety to get the job done."  32 F.3d at 939.  Similarly, in *Garrett*, plaintiffs allegedly injured by nearby sandblasting operations had lodged complaints about the harmful practice with the employee defendant, and the employee did not remedy the situation.  2016 WL 945056, at *4.  And in *Turner*, an oil-spill case involving allegations that the employee defendant did not follow the refinery's protocol for flood risk, the employee defendant testified that he was aware of the relevant flood protocol, that he understood the rationale behind the protocol, that he knew the risks posed by possible flooding at the refinery, and that, before the relevant incident, he was "aware of the potential for flooding."  2007 WL 4233676, at *3-4.  Facts like these, indicating that an employee defendant had personal knowledge of the hazard that ultimately caused the plaintiffs' injuries, are significant for the purposes of *Canter* liability.  As the Fifth Circuit has explained, "[a] supervisor's knowledge of the dangers present 'could give rise to the personal duty

contemplated in *Canter*.'" *Ford*, 32 F.3d at 936 (quoting *Hayden v. Phillips Petroleum Co.*, 788 F. Supp. 285, 287 (E.D. La. 1992)). As discussed in the Court's remand order, plaintiffs here have alleged no facts of this kind. What these cases stand for, at most, is that an off-premises injury does not alone preclude liability if other factors favor the existence of a personal duty. For these reasons, the cases that plaintiffs cite do not warrant reconsideration of the Court's findings that it was proper to consider in its duty analysis that plaintiffs' injuries occurred off-premises, or that the off-premises location of plaintiffs' injuries weighs against a finding of personal duty.

Because plaintiffs' *Canter* arguments fail, and because the Court's other reasoning on the duty question remains unchallenged, the Court denies plaintiffs' request to reconsider its finding that the employee defendants did not owe a personal duty to plaintiffs for the purposes of *Canter* liability.

### B.   Improper Joinder

Second, the Court rejects plaintiffs' arguments regarding the Court's improper-joinder analysis. Plaintiffs argue that the Court erred by (i) piercing the pleadings to consider the employee defendants' declarations, (ii) failing to consider certain "unchallenged factual allegations" in the complaint, (iii) failing to draw "reasonable inferences from the facts alleged"

in the complaint, and (iv) "appear[ing]" not to have considered the sworn permit applications that plaintiffs attached to their reply memorandum.[34]

These arguments lack merit. The Court properly considered the employee defendants' sworn declarations, attesting to certain discrete facts that would preclude plaintiffs' recovery, including, for instance, that the employee defendants' "'sole responsibility' as ROs, as to emissions levels, was 'certifying the accuracy of [Union Carbide]'s regulatory submissions.'"[35] These statements, coupled with the regulatory definition of an RO, and the insufficiency of plaintiffs' factual allegations regarding the employee defendants' RO status and job responsibilities, persuaded the Court that Dow and Union Carbide did not, for *Canter* purposes, delegate any relevant duty to the employee defendants. The Court's other citations to the declarations served a similar purpose: to further illustrate, alongside plaintiffs' factually vacant allegations in the complaint, that their *Canter* theory was meritless. And in any case, the Court already considered plaintiffs' objections to these declarations in their original briefing on the motion to remand. The Court declines to rehear those arguments on the present motion.

---

34    R. Doc. 41-1 at 10.
35    R. Doc. 38 at 11.

The Court also rejects plaintiffs' contentions that the Court failed to consider, or to draw reasonable inferences from, the factual allegations in the complaint.  The Court cited extensively to plaintiffs' complaint, and found it factually wanting.  And the "facts" that plaintiffs re-urge at this stage were either considered and found inadequate to state a claim, or are indeed legal conclusions couched as factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Finally, plaintiffs protest that the Court did not cite in its remand order the permit applications that plaintiffs attached to their reply brief.  But the Court found these exhibits to be useless for the remand motion.  The documents merely indicate that the employee defendants submitted permit applications, and that they certified that they met the regulatory criteria to be ROs.[36]  But there is no dispute that the employee defendants were ROs, that they submitted permit applications, and that they purportedly satisfied the regulatory criteria. The documents therefore do nothing to salvage plaintiffs' RO theory.  And that the Court did not cite them in its order denying remand does not warrant reconsideration.

---

[36]   *See, e.g.*, R. Doc. 35-2 at 23 (Certification of Compliance with Applicable Requirements, signed by Jackie Yaworski) (June 8, 2020).

## C.    Battery Claims

Third, the Court rejects plaintiffs' arguments regarding the dismissal of their battery claims.  In opposing remand, defendants Dow and Union Carbide explicitly argued that plaintiffs had not stated a claim for civil battery, with citations to case authority.[37]  Of course, defendants were prudent to do so—their removal to federal court was premised on the improper joinder of the employee defendants.  If plaintiffs had shown a possibility of recovery against any of the nondiverse employees, under *any* theory of liability, then joinder was not improper, and the case would have had to be remanded for lack of diversity.  Accordingly, defendants sought dismissal of plaintiffs' civil-battery claims.  Plaintiffs, in reply, did not dedicate one word to their expressly challenged battery claims.  This 54(b) motion is not the proper vehicle for these belated arguments.  *Cf. Templet*, 367 F.3d at 478-79 (noting that a motion to reconsider is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of [the order].").

Regardless, plaintiffs have not shown that the Court's conclusion was erroneous.  Plaintiffs challenge the Court's statement that it was unaware of any Louisiana case law recognizing the viability of a claim of battery by

---

[37]    R. Doc. 32 at 11 n.4.

18

omission.  In support of their argument, plaintiffs cite three cases: *Swope v. Columbian Chemicals Co.*, 281 F.3d 185 (5th Cir. 2002), *Mulkey v. Century Indemnity Co.*, No. 2016-1119, 2017 WL 1378234 (La. App. 1 Cir. 2017), and *Nase v. Teco Energy*, 347 F. Supp. 2d 313 (E.D. La. 2004).  The Court welcomes plaintiffs' belated research, which would have been useful had it been supplied in the original briefing.  The Court further acknowledges that two of these cases, *Swope* and *Mulkey*, could be read to support the view that a failure to act, under circumstances where the non-actor knows imminent and direct harm will result from his inaction, could amount to battery under Louisiana law.  But this does not rectify plaintiffs' theory as alleged here.  As explained in the Court's remand order, plaintiffs' complaint merely recites the elements of civil battery in a conclusory fashion, with no discernible factual content.

At any rate, the cases that plaintiffs cite do not change this Court's prior conclusion that plaintiffs have not stated a battery claim.  In *Swope*, 281 F.3d 185, the Fifth Circuit reversed summary judgment as to plaintiff's battery claims because the record indicated that plaintiff's employer, Columbian,

> continually required [plaintiff] to breathe ozone without protective respiratory equipment throughout his nine years and some months of employment. Columbian in this manner repeatedly caused him and other employees to breathe levels of ozone high enough to cause them respiratory discomfort, "choke ups," nausea, headaches,

and chest pains.  On at least three occasions, employees other than Mr. Swope had passed out from breathing too much ozone and had been taken to hospital emergency rooms or given oxygen on the plant premises.  Many other times, employees had to flee the immediate vicinity in which they were working because the ozone level had become intolerable.  In fact, from the deposition testimony, it appears that the only safety instruction Columbian ever gave to Mr. Swope and his fellow employees for dealing with such levels of ozone was to vacate the area of excessive concentration of ozone, get some fresh air, and return to work when feeling better.

*Id.* at 194.  The Fifth Circuit held that this evidence could lead a reasonable jury to find that defendant "knew to a substantial certainty that it was continually exposing [plaintiff] to high levels of ozone without affording him the protection of any respiratory safeguard," and that "his direct inhalations of such large quantities of ozone would do gradual, but definite and repeated, bodily harm to him." *Id.* at 201.  Defendants' inaction was akin to recklessness or deliberate indifference.  Plaintiffs here have alleged no facts that even remotely resemble these facts supporting a battery claim in *Swope*.

Similarly, in *Mulkey*, 2017 WL 1378234, the Louisiana First Circuit Court of Appeal reversed the trial court's dismissal of plaintiffs' battery claims because plaintiffs had "elaborate[d] in articulated detail individuals at Exxon who were aware of problems with benzene exposure and the dates

of their knowledge." *Id.* at *3.  As explained at length in the Court's remand order, plaintiffs here have asserted no specific facts to this effect.

Finally, this Court's opinion in *Nase*, 347 F. Supp. 2d 313, is inapplicable.  There, the sole basis of defendants' assertion that plaintiff had not stated a claim for an intentional tort was that plaintiff said at his deposition that he did not know whether the individual defendant "intended to hurt" him, and that plaintiff did not experience personal apprehension that the individual defendant was trying to hurt him.  *Id.* at 321-22.  The Court noted that these statements are not fatal to a battery claim, because an act can be "intentional" so long as the person who acts "knows that the result is substantially certain to follow from his conduct."  *Id.* at 322.  The basis of defendants' argument was therefore legally meritless.  Here, the Court explained and considered the elements of battery under Louisiana law, and found that plaintiffs had not stated a claim.

None of plaintiffs' cited cases warrant reconsideration of the Court's remand order.  The Court denies reconsideration as to the dismissal of plaintiffs' civil-battery claims.

### D.    Dismissal of Michael Faulkner

Fourth and finally, the Court declines to reconsider its dismissal of plaintiffs' claims against Michael Faulkner.  Plaintiffs urging reconsideration assert that the improper-joinder doctrine does not apply to Faulkner, because he is a diverse defendant.  Be that as it may, plaintiff lodged identical allegations against the five employee defendants, and this Court found that, under *Smallwood*'s improper-joinder standard, plaintiffs had shown no possibility of recovery against those defendants.  For the same reasons, the Court found that plaintiffs had not stated a viable claim against Michael Faulkner.  Irrespective of the applicability of the improper-joinder doctrine, his dismissal was proper.  As the Fifth Circuit has explained, "[a] district court may consider the sufficiency of a complaint on its own initiative, 'as long as the procedure employed is fair,'" which generally requires notice and the opportunity to respond.  *Hager v. DBG Partners, Inc.*, 903 F.3d 460, 464 (5th Cir. 2018) (citations omitted).  Here, defendants' removal and plaintiffs' motion to remand placed squarely at issue the viability of plaintiffs' claims as to *all* employee defendants.  Plaintiffs had clear notice and an opportunity to be heard on the possible dismissal of their claims against the employee defendants.   And nowhere in their briefing did plaintiffs attempt to distinguish their factual allegations against Faulkner from their allegations

22

against the in-state employee defendants.  Accordingly, once the Court concluded that plaintiffs' claims against the in-state employee defendants must be dismissed, "it would [have] be[en] 'incongruous' and 'unfair' to allow [those] defendants to prevail, while not providing the same benefit to" Faulkner, a "similarly situated defendant[]."  *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (citing *Gulf Coast Fans, Inc. v. Midwest Elec. Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984)); *see also Davis v. Ducote*, No. 14-84, 2014 WL 6982427, at *1 & n.1 (W.D. La. Dec. 9, 2014) (granting one defendant's motion to dismiss and allowing a non-moving defendant to benefit from the dismissal).

Relatedly, plaintiffs' attempt to invoke the "common defense" rule fails.  Though the rule's relevance to plaintiffs' contentions regarding Faulkner's dismissal is unclear, the Court nonetheless addresses the argument.  Under the "common defense" corollary to the improper-joinder doctrine, "if the showing of no possibility of recovery against the local defendant applies equally to *all* defendants, a remand [is] the appropriate disposition . . . ." *McDonal v. Abbott Labs.*, 408 F.3d 177, 184 (5th Cir. 2005) (emphasis added).  The principle underlying this rule is that, if the common defense disposes of *all* claims against *all* defendants, then the issue is not with joinder, but with the merits of the claims. *See id.* at 183.  But the Fifth

23

Circuit has been clear that, if "the common defense proffered would not dispose 'of every claim against every defendant, [the district court] should continue to deny remand and proceed with the proper disposition of the case.'" *Id.* at 184 (citing *Rainwater v. Lamar Life Ins. Co.*, 391 F.3d 636, 638 (5th Cir. 2004)).  Here, the asserted defense is common only to the employee defendants, and not to the corporate defendants, Dow and Union Carbide. Because this defense does not "appl[y] uniformly to all defendants" or result in the "dismiss[al] [of] the suit as a whole," *id.*, the "common defense" doctrine has no application.

Accordingly, the Court declines to reconsider its dismissal of plaintiffs' claims against Michael Faulkner.

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs' motion to reconsider is DENIED.

New Orleans, Louisiana, this __7th__ day of March, 2022.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE