UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TERRI CAMBRE, ET AL. | CIVIL ACTION |
| VERSUS | NO. 21-1067 |
| UNION CARBIDE CORPORATION, ET AL. | SECTION "R" (1) |

## ORDER AND REASONS

Before the Court is defendants Dow Chemical Company ("Dow") and Union Carbide Corporation's ("Union Carbide") motion to sever plaintiffs' claims.[1] Plaintiffs oppose the motion.[2]

For the following reasons, the Court grants the motion, and severs each plaintiff's claims. This case shall be severed into seven separate civil actions, each with one plaintiff. Plaintiff Terri Cambre's case shall remain assigned to Section R, and the six severed cases shall be randomly allotted to other sections of this court.

### I.  BACKGROUND

This case arises out of alleged exposure to ethylene oxide ("EtO") near a petrochemical plant in Hahnville, Louisiana (the "facility"), owned and

---

[1]  R. Doc. 45.
[2]  R. Doc. 46.

1

operated by defendants Dow and Union Carbide.[3] Plaintiffs are seven Louisiana residents who live near the facility,[4] and who have contracted breast cancer allegedly because of unknowing exposure to dangerous levels of EtO emitted by the facility.[5]

On April 26, 2021, plaintiffs filed suit in the Civil District Court for the Parish of St. Charles, alleging that inhalation of EtO emitted from the facility was a substantial factor in causing plaintiffs' breast cancer.[6] Plaintiffs allege claims of negligence, civil battery, and certain violations of the vicinage articles of the Louisiana Civil Code against defendants Dow and Union Carbide.[7] On June 2, 2021, Dow and Union Carbide removed the case to federal court, contending that the requirements for diversity jurisdiction under 28 U.S.C. § 1332 were satisfied.[8]

On January 3, 2022, defendants moved to sever each plaintiff's claims under Rules 20(a)(1) and 21 of the Federal Rules of Civil Procedure, citing the factual and legal differences presented by the seven plaintiffs' claims.[9]

---

3   R. Doc. 1-1 ¶ 1.
4   *Id.* ¶¶ 12-18, 72-77.
5   *Id.* ¶¶ 1, 7-8.
6   *Id.* ¶¶ 1-9.
7   R. Doc. 1-1 ¶¶ 78-96.
8   R. Doc. 1 ¶¶ 14-23.
9   R. Doc. 45.

Plaintiffs oppose the motion, and seek to proceed in one civil action.[10] The Court considers the motion below.

## II.   LEGAL STANDARD

Under Rule 21, a district court has "broad discretion" to sever improperly joined parties and claims. *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994); *see also Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000). Rule 20(a)(1) provides that plaintiffs may be joined together in one action if (1) the asserted right to relief arises "out of the same transaction, occurrence, or series of transactions or occurrences," and (2) the action will present a question of law or fact common to all of the plaintiffs. Fed. R. Civ. P. 20(a)(1). Both requirements must be met for the parties to be properly joined. *See Porter v. Milliken & Michaels, Inc.*, 2000 WL 1059849, at * 1 (E.D. La. Aug. 1, 2000); *see also* Wright & Miller, Federal Practice and Procedure § 1653 (3d ed. 2021).

Furthermore, even if parties are properly joined under Rule 20(a), the court may, in its discretion, choose to sever parties under Rule 21, which provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21; *see also United States v.*

---

10    R. Doc. 46.

3

*O'Neil*, 709 F.2d 361, 369 (5th Cir. 1983). To decide whether Rule 21 severance is appropriate, the court considers the two 20(a) criteria alongside other considerations, including whether settlement or judicial economy would be promoted, whether prejudice would be averted by severance, and whether different witnesses and documentary proof are required for separate claims. *Rohr v. Metro. Ins. & Cas. Co.*, No. 06-10511, 2007 WL 163037, at *2 (E.D. La. Jan. 17, 2007); *E. Cornell Malone Corp. v. Sisters of the Holy Fam., St. Mary's Acad. of the Holy Fam.*, 922 F. Supp. 2d 550, 561 (E.D. La. 2013). Severance of plaintiffs' claims results in the creation of separate civil actions. *O'Neil*, 709 F.2d at 368.

### III. DISCUSSION

Here, the Court finds that, irrespective of whether joinder was permissible under Rule 20(a)—which the Court does not decide—there is no question that severance is appropriate under Rule 21, in light of the significant differences in the factual and legal issues involved in each plaintiff's claims.

First, there are significant differences in the timing and length of each plaintiff's alleged exposure to EtO. For instance, plaintiff Quincee Berthelot, age 62 at the time of the complaint, alleges that she has lived near the facility

4

her whole life.[11] This places the commencement of her alleged exposure in approximately 1959. The other six plaintiffs allege that their exposures began, respectively, in 1968 (Wolfe), 1970 (Cambre), 1975 (Grows), 1995 (Meredith), and 2000 (Marchese and Myers).[12] These distinct periods of exposure mean that each plaintiff's case will require and yield differing facts regarding, for instance, the actual emissions of EtO over various years, and the respective responsibilities, knowledge, and acts of Dow and Union Carbide during these various periods of time. The distinct periods of exposure will also bear on each plaintiff's showing of fault and causation, thereby affecting the legal viability of each plaintiff's case. These timing distinctions strongly favor severance of the plaintiffs' claims.

---

[11] *See* R. Doc. 1-1 ¶ 12 ("Quincee Berthelot . . . has been and continues to be exposed to EtO from the facility at her home," and "has lived near the facility her entire life.").

[12] *Id.* ¶ 13 ("Terri Cambre . . . has been and continues to be exposed to EtO from the facility at her home," and "has lived near the facility her entire life."); *id.* ¶ 14 ("Gia Lewis Grows . . . has been and continues to be exposed to EtO from the facility at her home . . . , and was exposed at her [prior] home . . . for her whole life until 2007."); *id.* ¶ 15 ("Denise Marchese . . . has been and continues to be exposed to EtO from the facility at her home . . . since 2000."); *id.* ¶ 16 ("Pamela Meredith . . . has been and continues to be exposed to EtO from the facility at her home . . . since 1995."); *id.* ¶ 17 ("Rosalie Myers . . . has been and continues to be exposed to EtO from the facility at her home . . . since 2000."); *id.* ¶ 18 ("Yvonne Wolfe . . . has been and continues to be exposed to EtO from the facility at her home . . . since 1968.").

Second, plaintiffs' exposures occurred at different locations. For example, defendants submit, and plaintiffs do not contest, that a Google Map search reveals that plaintiff Wolfe lives approximately 2.89 miles southeast of the facility, while defendant Grows lives fourteen miles from the facility in the opposite direction.[13] Relatedly, there is no indication that plaintiffs worked or otherwise handled their day-to-day responsibilities in similar locations. These differences bear heavily on the causation element of each plaintiff's claims. A plaintiff who worked all day in her home near the facility surely has a different case, and faces different defenses, than one who worked far out of town, away from the facility and possibly exposed to other toxins or risk factors. Put simply, in a case whose core allegation is years-long exposure to an airborne toxin, differences in location matter. This consideration further militates against joinder of all seven plaintiffs.

Third, litigation of these claims will involve extensive medical evidence that is sure to vary across plaintiffs. While all seven plaintiffs have been diagnosed with breast cancer, there is no indication that they share common risk factors for the development of breast cancer, including age, genetics, family history, exposure to other carcinogens, and alcohol and drug use. And the import of these differences is further compounded the differences

---

[13]   *See* R. Doc. 45-1 at 14.

discussed above, regarding the timing, location, and therefore the *degree*, of plaintiffs' respective exposures to EtO. Accordingly, the nature and extent of defendants' liability will be unique to each plaintiff. The same is true for damages. Plaintiffs were diagnosed with breast cancer at different times, and certainly have incurred different medical expenses and other past damages. Similarly, differences in prognoses and plans for treatment will affect each plaintiff's entitlement to future damages.

For these same reasons, the necessary witnesses and documentary proof will vary widely across plaintiffs, as each plaintiff will need to submit her own medical records, as well as testimony from her treating physicians, family members, and other witnesses unique to her. The highly individualized nature of these medical inquiries further persuades this Court that severance is proper. *Cf. Guilbeau v. Wyeth, Inc.*, No. 09-1652, 2010 WL 2216710, at *2 (W.D. La. May 28, 2010) (granting a motion to sever in a products-liability case where "each plaintiff's claim involves different medical histories, different courses of treatment and/or underlying conditions, different prescribing physicians, different alleged periods of ingestion, different alleged injuries and different treatment options and risks," meaning that, therefore, "each case will require separate factual analysis as to medical causation and damages.").

7

Fourth, these cases are clearly destined for separate trials. Trying all seven cases to the same jury would be unduly prejudicial to defendants, and would pose an unacceptable risk of confusing the jury. For instance, as one court has explained, "by trying . . . two [plaintiffs'] claims together, one plaintiff, despite a weaker case of causation, could benefit merely through association with the stronger plaintiff's case." *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 758 (C.D. Cal. 2016). And because separate trials are inevitable, the Court finds its appropriate to sever the cases at this stage, before the start of discovery and motion practice. Indeed, the judge who will preside over each plaintiff's trial is best situated to issue rulings on dispositive motions, and *Daubert* and other evidentiary motions.

For these reasons, the Court finds that joinder of the seven plaintiffs is not appropriate. On the contrary, the significant factual and legal differences among each of plaintiff's claims warrant severance. The Court therefore severs plaintiffs' claims under Rule 21 of the Federal Rules of Civil Procedure.

## IV.  CONCLUSION

For the foregoing reasons, defendants' motion to sever is GRANTED. This case shall be SEVERED into seven distinct civil actions.

It is ORDERED that this case, Case No. 21-1067, named plaintiff Terri Cambre, shall remain assigned to Section R. The Clerk of Court is ORDERED to sever the other six plaintiffs, and reallot the six severed cases among the judges of the U.S. District Court for the Eastern District of Louisiana. For the purposes of Local Rules 3.1 and 3.1.1, this Court has determined that the claims of the seven plaintiffs are not related.

It is FURTHER ORDERED that, within ten days of the opening of the new civil actions, each plaintiff shall file an amended complaint in her respective case, confining the allegations therein to her respective claims.

It is FURTHER ORDERED that, in each of the newly created cases, the respective plaintiff shall pay to the Clerk of Court a filing fee of $402.00, at the time when the amended complaint is filed.

New Orleans, Louisiana, this __28th__ day of March, 2022.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE